**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

-----------------------------------------------------------------X

ANTONIO HERRERA,
2646 SW 27th Ct., Miami, FL 33133,

and

RICARDO LEAL,
1422 NW 23rd Ave, Miami, FL 33125,

and

DAN MOBLEY,
9925 Matti Hill Ct., Fredericksburg, VA 22407,

and                                                    CIVIL ACTION NO.: 3:13CV370

ANDREW PAGE,
115 Jefferson Ave., Locust Grove, VA 22508,

on behalf of themselves and others
similarly situated,
        PLAINTIFFS,

                                   **ECF CASE
COLLECTIVE ACTION
v.**                                   **COMPLAINT**

TBC CORPORATION,                         **JURY TRIAL DEMANDED**
4300 TBC Way
Palm Beach Gardens, FL 33410,
               DEFENDANT.

-----------------------------------------------------------------X

     Plaintiffs Antonio Herrera, Ricardo Leal, Dan Mobley and Andrew Page ("the named

Plaintiffs"), by and through counsel, on their own behalf and on behalf of all others similarly

situated, complain of Defendant TBC Corporation ("Defendant TBC"), as follows:

1

## INTRODUCTION

1.     Plaintiffs allege on behalf of themselves and other similarly situated current and former mechanics of the Defendant who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendant for work performed for which they did not receive any compensation as well as overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

2.     Defendant TBC compensated the named Plaintiffs and hundreds of similarly situated mechanics on an unlawful commission basis, classifying them as exempt commissioned salespersons.  Because there was no proportionality between mechanics' compensation and customer charges, this system was not a bona fide commission under 29 U.S.C. §207(i) ("Section 7(i)").

3.     Defendant TBC maintained certain records of actual hours worked by Plaintiffs and similarly situated employees, but because it was utilizing an unlawful commission system it did not compensate them for all hours worked.

4.     Defendant TBC misclassified the named Plaintiffs and similarly situated employees as exempt from overtime on the basis of its "flag rate" commission scheme.

5.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), on behalf of the following collective (the "FLSA Collective"):

> All mechanics who were, are or will be employed by Defendant
> TBC Corporation nationwide during the period of three years prior
> to the date of commencement of this action through the date of
> judgment in this action, who have neither been properly

2

compensated for all of their hours worked, nor paid time and one-half for hours in excess of forty (40).

6. Defendant TBC is therefore liable for its failure to pay the Plaintiffs and members of the putative class for all hours worked and time and one-half for hours in excess of forty (40) at their regular rate.

7. Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages, and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

## JURISDICTION AND VENUE

8. The Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b).

9. Venue is proper in this district pursuant to 28 U.S.C. §1391.

## PARTIES

10. Plaintiff Andrew Page was employed as a mechanic by Defendant TBC at the Carl D. Silver Parkway, Fredericksburg, Virginia NTB auto repair shop.

11. Plaintiffs Antonio Herrera and Ricardo Leal were employed as mechanics by Defendant TBC at the Coral Way, Miami, Florida Tire Kingdom auto repair shop.

12. At all relevant times, Plaintiff Andrew Page was a citizen and resident of Virginia.

13. At all relevant times, Plaintiffs Antonio Herrera and Ricardo Leal were citizens and residents of Florida.

14. Plaintiffs bring this action on their own behalf, and pursuant to 29 U.S.C. §216(b) as representatives of a proposed collective of similarly situated employees. Consents to join this action are attached as Exhibit A.

3

15. At all relevant times, Plaintiffs were employed by Defendant TBC as mechanics, and each was an employee within the meaning of 29 U.S.C. S 203(e)(1).

16. At all relevant times, Defendant TBC has been a Delaware corporation, conducting substantial business in the state of Virginia. Defendant operates auto repair shops in at least 41 states, including Virginia.

17. At all relevant times, Defendant TBC was an employer within the meaning of 29 U.S.C. §203(d).

18. At all relevant times, Defendant TBC was an enterprise within the meaning of 29 U.S.C. §203(r)(1).

19. At all relevant times, Plaintiffs were each employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§206-207.

## FACTUAL ALLEGATIONS

### A. Plaintiff Andrew Page

20. Plaintiff Andrew Page worked for Defendant TBC as a mechanic from in or about March 2012 to the present. As a mechanic, Mr. Page was classified as exempt from overtime under Section 7(i) and received no overtime wages.

21. Defendant TBC paid Mr. Page pursuant to an unlawful "flag rate" flat rate commission scheme.

22. Defendant TBC assigned a personal "flat hour rate" or "base rate" to Mr. Page and each of the similarly situated mechanics.

23. Defendant TBC assigned a time standard, or number of "flag hours," to most automotive services performed by Mr. Page and each of the similarly situated mechanics.

4

24. Defendant TBC used industry timetables to assign flag hours to services performed on non-warranty vehicles.

25. Defendant TBC used manufacturers' timetables which were not identical to the industry timetables to assign flag hours to services performed on cars entering the shop under manufacturer's warranty.

26. Defendant TBC claimed that it calculated a mechanic's pay for a given task by multiplying the mechanic's base rate by the number of "flag hours" it had assigned to that task, regardless of the actual number of hours the mechanic worked to complete the task.

27. In fact, managers at Defendant TBC would often credit Mr. Page with fewer flag hours for a given service than the timetables indicated.

28. Defendant TBC required Mr. Page to perform certain automotive services for no flag hours, including using "DNA" (Diagnostic Needs Analysis) kits, and performing 22-Point Vehicle Health Checks/diagnostics, alignment checks, tire rotations, and brake checks.

29. Defendant TBC excluded certain services from its flag rate system, instead paying Mr. Page a set fee for performing that service. For example, Mr. Page earned $5.00 for policy fixed wheel alignments and $15.00 for alignments sold.

30. From time to time, Defendant TBC also required Mr. Page to attend meetings, but did not credit him with any flag hours for that time.

31. For replacement of warranty or defective parts or repairs, it was Defendant TBC's policy to only credit Mr. Page and similarly situated mechanics with 50% of the flag time provided for a given service in the timetable.

32. Defendant TBC claimed it calculated customer charges for a service by multiplying the flag hours assigned to that service by some set rate.

33. In fact, certain customers such as specific car rental services and government agencies received a lower rate than other customers.

34. Customer bills also varied due to management's discretion to alter pricing for particular customers, due to, e.g., competitive pressures, customer relations, or for other reasons.

35. Defendant TBC would also from time to time employ sales, or otherwise discount the customer charges for a particular service, without altering the number of flag hours associated with that service.

36. Customer charges for a service did not vary depending upon the "base rate" of the mechanic performing the service.

37. Because there was no proportionality between customer charges and mechanics' compensation, this system did not qualify as a commission under Section 7(i).

38. Mr. Page routinely worked more than forty (40) hours per week, averaging approximately 47-50 hours per week performing automotive services, and at times working up to 54 hours per week.

39. Defendant TBC misclassified Mr. Page and similarly situated employees as exempt from overtime on the basis of its unlawful commission system.

40. Defendant TBC failed to properly record all hours worked by Mr. Page and similarly situated employees.

41. As a result, Defendant TBC failed to compensate Mr. Page for all of his hours worked, and failed to compensate him at a time and one-half rate for his hours worked over forty in a given workweek.

6

## B. Plaintiff Herrera

42.    Plaintiff Antonio Herrera worked for Defendant TBC as a mechanic from in or about March 2010 to present.  As a mechanic, Mr. Herrera was classified as exempt from overtime under Section 7(i) and received no overtime wages.

43.    Defendant TBC paid Mr. Herrera pursuant to an unlawful "flag rate" flat rate commission scheme.

44.    Defendant TBC assigned a personal "flat hour rate" or "base rate" to Mr. Herrera and each of the similarly situated mechanics.

45.    Defendant TBC assigned a time standard, or number of "flag hours," to most automotive services performed by Mr. Herrera and each of the similarly situated mechanics.

46.    Defendant TBC used industry timetables to assign flag hours to services performed on non-warranty vehicles.

47.    Defendant TBC used manufacturers' timetables which were not identical to the industry timetables to assign flag hours to services performed on cars entering the shop under manufacturer's warranty.

48.    Defendant TBC claimed that it calculated a mechanic's pay for a given task by multiplying the mechanic's base rate by the number of "flag hours" it had assigned to that task, regardless of the actual number of hours the mechanic worked to complete the task.

49.    In fact, managers at Defendant TBC would often credit Mr. Herrera with fewer flag hours for a given service than the timetables indicated.

50.    Defendant TBC required Mr. Herrera to perform certain automotive services for no flag hours, including using "DNA" (Diagnostic Needs Analysis) kits, and performing 22-Point Vehicle Health Checks/diagnostics, alignment checks, tire rotations, and brake checks.

51.    Defendant TBC excluded certain services from its flag rate system, instead paying Mr. Herrera a set fee for performing that service. For example, Mr. Page earned $5.00 for policy fixed wheel alignments and $15.00 for alignments sold.

52.    From time to time, Defendant TBC also required Mr. Herrera to attend meetings, but did not credit him with any flag hours for that time.

53.    For replacement of warranty or defective parts or repairs, it was Defendant TBC's policy to only credit Mr. Herrera and similarly situated mechanics with 50% of the flag time provided for a given service in the timetable. In reality, Mr. Herrera was generally credited with no flag time for such replacements or repairs.

54.    Defendant TBC did not solely calculate customer charges for a service by multiplying the flag hours assigned to that service by some set rate.

55.    In fact, certain customers such as specific car rental services and government agencies received a lower rate than other customers.

56.    Customer bills also varied due to management's discretion to alter pricing for particular customers, due to, e.g., competitive pressures, customer relations, or for other reasons.

57.    Defendant TBC would also from time to time employ sales, or otherwise discount the customer charges for a particular service, without altering the number of flag hours associated with that service.

58.    Customer charges for a service did not vary depending upon the "base rate" of the mechanic performing the service.

59.    Because there was no proportionality between customer charges and mechanics' compensation, this system did not qualify as a commission under Section 7(i).

60.    Mr. Herrera routinely worked more than forty (40) hours per week, averaging approximately 55 hours per week performing automotive services.

61.    Defendant TBC misclassified Mr. Herrera and similarly situated employees as exempt from overtime on the basis of its unlawful commission system.

62.    Defendant TBC failed to properly record all hours worked by Mr. Herrera and similarly situated employees.

63.    As a result, Defendant TBC failed to compensate Mr. Herrera for all of his hours worked, and failed to compensate him at a time and one-half rate for his hours worked over forty in a given workweek.

### C.  Plaintiff Leal

64.    Plaintiff Ricardo Leal worked for Defendant TBC as a mechanic from in or about January 2011 until in or about January 2013.  As a mechanic, Mr. Leal was classified as exempt from overtime under Section 7(i) and received no overtime wages.

65.    Defendant TBC paid Mr. Leal pursuant to an unlawful "flag rate" flat rate commission scheme.

66.    Defendant TBC assigned a personal "flat hour rate" or "base rate" to Mr. Leal and each of the similarly situated mechanics.

67.    Defendant TBC assigned a time standard, or number of "flag hours," to most automotive services performed by Mr. Leal and each of the similarly situated mechanics.

68.    Defendant TBC used industry timetables to assign flag hours to services performed on non-warranty vehicles.

9

69. Defendant TBC used manufacturers' timetables which were not identical to the industry timetables to assign flag hours to services performed on cars entering the shop under manufacturer's warranty.

70. Defendant TBC claimed that it calculated a mechanic's pay for a given task by multiplying the mechanic's base rate by the number of "flag hours" it had assigned to that task, regardless of the actual number of hours the mechanic worked to complete the task.

71. In fact, managers at Defendant TBC would often credit Mr. Leal with fewer flag hours for a given service than the timetables indicated.

72. Defendant TBC required Mr. Leal to perform certain automotive services for no flag hours, including using "DNA" (Diagnostic Needs Analysis) kits, and performing 22-Point Vehicle Health Checks/diagnostics, alignment checks, tire rotations, and brake checks.

73. From time to time, Defendant TBC also required Mr. Leal to attend meetings, but did not credit him with any flag hours for that time.

74. For replacement of warranty or defective parts or repairs, it was Defendant TBC's policy to only credit Mr. Leal and similarly situated mechanics with 50% of the flag time provided for a given service in the timetable.

75. Defendant TBC did not solely calculate customer charges for a service by multiplying the flag hours assigned to that service by some set rate.

76. In fact, certain customers such as specific car rental services and government agencies received a lower rate than other customers.

77. Customer bills also varied due to management's discretion to alter pricing for particular customers, due to, e.g., competitive pressures, customer relations, or for other reasons.

78.    Defendant TBC would also from time to time employ sales, or otherwise discount the customer charges for a particular service, without altering the number of flag hours associated with that service.

79.    Customer charges for a service did not vary depending upon the "base rate" of the mechanic performing the service.

80.    Because there was no proportionality between customer charges and mechanics' compensation, this system did not qualify as a commission under Section 7(i).

81.    Mr. Leal routinely worked more than forty (40) hours per week, averaging approximately 47-56 hours per week performing automotive services.

82.    Defendant TBC misclassified Mr. Leal and similarly situated employees as exempt from overtime on the basis of its unlawful commission system.

83.    Defendant TBC failed to properly record all hours worked by Mr. Leal and similarly situated employees.

84.    As a result, Defendant TBC failed to compensate Mr. Leal for all of his hours worked, and failed to compensate him at a time and one-half rate for his hours worked over forty in a given workweek.

**D. Plaintiff Mobley**

85.    Plaintiff Dan Mobley worked for Defendant TBC as a mechanic from in or about 2000 until the present.  As a mechanic, Mr. Mobley was classified as exempt from overtime under Section 7(i) and received no overtime wages.

86.    Defendant TBC paid Mr. Mobley pursuant to an unlawful "flag rate" flat rate commission scheme beginning in or about 2012.

87.     Defendant TBC assigned a personal "flat hour rate" or "base rate" to Mr. Mobley and each of the similarly situated mechanics.

88.     Defendant TBC assigned a time standard, or number of "flag hours," to most automotive services performed by Mr. Mobley and each of the similarly situated mechanics.

89.     Defendant TBC used industry timetables to assign flag hours to services performed on non-warranty vehicles.

90.     Defendant TBC used manufacturers' timetables which were not identical to the industry timetables to assign flag hours to services performed on cars entering the shop under manufacturer's warranty.

91.     Defendant TBC claimed that it calculated a mechanic's pay for a given task by multiplying the mechanic's base rate by the number of "flag hours" it had assigned to that task, regardless of the actual number of hours the mechanic worked to complete the task.

92.     In fact, managers at Defendant TBC would often credit Mr. Mobley with fewer flag hours for a given service than the timetables indicated.

93.     Defendant TBC required Mr. Mobley to perform certain automotive services for no flag hours, including using "DNA" (Diagnostic Needs Analysis) kits, and performing 22-Point Vehicle Health Checks/diagnostics, alignment checks, tire rotations, and brake checks.

94.     From time to time, Defendant TBC also required Mr. Mobley to attend meetings, but did not credit him with any flag hours for that time.

95.     For replacement of warranty or defective parts or repairs, it was Defendant TBC's policy to only credit Mr. Mobley and similarly situated mechanics with 50% of the flag time provided for a given service in the timetable.

12

96.    Defendant TBC did not solely calculate customer charges for a service by multiplying the flag hours assigned to that service by some set rate.

97.    In fact, certain customers such as specific car rental services and government agencies received a lower rate than other customers.

98.    Customer bills also varied due to management's discretion to alter pricing for particular customers, due to, e.g., competitive pressures, customer relations, or for other reasons.

99.    Defendant TBC would also from time to time employ sales, or otherwise discount the customer charges for a particular service, without altering the number of flag hours associated with that service.

100.    Customer charges for a service did not vary depending upon the "base rate" of the mechanic performing the service.

101.    Because there was no proportionality between customer charges and mechanics' compensation, this system did not qualify as a commission under Section 7(i).

102.    Mr. Mobley routinely worked more than forty (40) hours per week, averaging approximately 50 hours per week performing automotive services, and at times working up to 70-80 hours per week.

103.    Defendant TBC misclassified Mr. Mobley and similarly situated employees as exempt from overtime on the basis of its unlawful commission system.

104.    Defendant TBC failed to properly record all hours worked by Mr. Mobley and similarly situated employees.

105.    As a result, Defendant TBC failed to compensate Mr. Mobley for all of his hours worked, and failed to compensate him at a time and one-half rate for his hours worked over forty in a given workweek.

## FLSA COLLECTIVE ALLEGATIONS

106.    Defendant TBC intentionally misclassified its mechanics in the FLSA Collective as exempt from the FLSA overtime provisions under Section 7(i), pursuant to an unlawful commission payment scheme.

107.    Members of the FLSA Collective are similarly situated.

108.    Members of the FLSA Collective have substantially similar job requirements and pay provisions, and are subject to a common practice, policy or plan that requires or permits them to perform uncompensated work for the benefit of Defendant TBC in excess of forty (40) hours per workweek.

109.    There are numerous similarly situated current and former mechanics whom Defendant TBC misclassified and continues to misclassify as exempt from overtime under Section 7(i), in violation of the FLSA, and who would benefit from the issuance of a Court Supervised Notice of the present lawsuit and the opportunity to join in the lawsuit.

110.    These similarly situated employees are known to Defendant TBC, are readily identifiable, and can be located through Defendant's records.

111.    Members of the proposed FLSA Collective, and Plaintiffs, should therefore be permitted to pursue their claims collectively pursuant to 29 U.S.C. §216(b).

112.    Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed collective.

113.    Plaintiffs request that they be permitted to serve as representatives of those who have consented to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. §216(b).

14

## Count One

## Violation of the Fair Labor Standards Act

114.    Plaintiffs incorporate by reference paragraphs 1 through 113.

115.    Defendant TBC willfully violated the FLSA by misclassifying Plaintiffs and members of the proposed FLSA Collective as exempt from overtime under Section 7(i), and a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. §255.

116.    At all relevant times Defendant TBC has been, and continues to be, an "employer" engaged in interstate "commerce" and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

117.    At all relevant times, Defendant TBC has employed, and continues to employ, "employee[s]," including the Plaintiffs, and each of the members of the prospective FLSA Collective, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. §203.

118.    At all relevant times, Defendant TBC had annual gross revenues in excess of $500,000.

119.    Defendant TBC has willfully and intentionally engaged in a widespread pattern and practice of violating provisions of the FLSA by misclassifying Plaintiffs and similarly situated mechanics as exempt commissioned salespersons under Section 7(i), and thereby failing and refusing to pay them overtime compensation for hours worked in excess of forty (40) per workweek, as well as compensation for all of their hours worked.

120.    The payment scheme to which Plaintiff and members of the proposed class are subject is not a bona fide commission pursuant to 29 U.S.C. §207(i) and corresponding regulations.

15

121.    On information and belief, Defendant TBC has willfully and intentionally misclassified similarly situated mechanics as exempt commissioned salespersons under Section 7(i), during weeks in which their regular rate fell below one and one-half times the applicable minimum wage, and thereby failing and refusing to pay them overtime compensation for hours worked in excess of forty (40) per workweek.

122.    Plaintiffs and members of the proposed collective are not subject to any other exemption set forth in the FLSA or administrative regulations.

123.    As a result of Defendant TBC's violations of the FLSA, Plaintiffs and similarly situated employees have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §207.

124.    Defendant TBC has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and similarly situated current and former mechanics.

125.    As a result of Defendant TBC's unlawful acts, Plaintiffs and the proposed FLSA Collective have been deprived of straight time compensation and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §216(b).

## JURY DEMAND

126.    Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all those similarly situated pray that this Honorable Court:

16

a.      Issue an Order certifying this action as a collective action under the FLSA and designate the above Plaintiffs as representatives of all those similarly situated under the FLSA collective action;

b.      Allow Plaintiffs, at the earliest possible time, to give notice of this collective action, or that the court issue such notice to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, employed by Defendant TBC as mechanics. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

d.      Award Plaintiffs and all those similarly situated actual damages for unpaid wages and liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs and the collective as provided by the FLSA, 29 U.S.C. §216(b);

e.      Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate as provided by the FLSA, 29 U.S.C. §216(b);

f.      Award Plaintiffs and all those similarly situated attorneys' fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. §216(b);

g.      Award Plaintiffs and all those similarly situated such other and further relief as this Court deems just and proper.

17

Dated: June 4, 2013

Respectfully submitted,

By: _____

James H. Shoemaker, Jr., VSB No. 33148
Jason E. Messersmith, VSB No. 77075
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
jshoemaker@pwhd.com
jmessersmith@pwhd.com
Telephone: (757) 223-4500
Facsimile: (757) 223-4518


By: ___/s/ Giselle Schuetz_____
Giselle Schuetz, Esq.
Law Offices of Joshua Friedman, P.C.
1050 Seven Oaks Lane
Mamaroneck, New York 10543
Telephone: (212) 308-4338 x
Facsimile: (866) 731-5553
Email: @joshuafriedmanesq.com
*To Be Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFFS

18