IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| ANTONIO HERRERA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13CV370–HEH |
| | ) | |
| TBC CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
### (Defendants' Motion for Summary Judgment)

This is a putative collective action brought under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.* The proposed class, which seeks overtime

compensation, encompasses all mechanics employed by Defendants TBC Retail Group,

Inc. and NTW, LLC d/b/a NTB who are paid on a "flat rate" basis. This case is presently

before the Court on Defendants' Motion for Summary Judgment.[1] The motion turns on a

narrow dispositive issue—whether the challenged method of flat rate compensation is a

bona fide commission plan—and if so, whether it is exempted from overtime by 29

U.S.C. § 207(i). Both parties have filed memoranda supporting their respective positions.

The Court heard oral argument on April 30, 2014.

Defendants operate retail establishments at over 800 locations nationwide.

Defendants offer not only automotive repair services, but they sell a variety of parts and

accessories to the general public. Plaintiffs are mechanics employed by Defendants.

---

[1] TBC Corporation states that it is not a proper Defendant but adopts the arguments set forth by
TBC Retail Group, Inc. and NTW, LLC d/b/a NTB. (Defs.' Mot. Summ. J. 1 n.1, ECF No. 47.)

According to Plaintiffs, they are compensated in one of two ways. Approximately one third participate in what they refer to as a commission program. Under this program, mechanics are compensated based on their certifications and skill sets, thereby receiving a straight percentage of the billed mechanical work that they perform. (Pls.' Mem. Opp'n Mot. Summ. J. 3, ECF No. 52.) Compensation under this straight commission program is not at issue in this case. The remaining mechanics, who compose the proposed class, are compensated under what is commonly referred to as a flat rate system. (*Id.* 4.) Although the parties disagree on aspects of this compensation scheme, the basic underlying formula appears to be clear.

The compensation received by Plaintiffs is the product of two factors: "turned hours" times "flat rate." (Defs.' Mem. Support Mot. Summ. J. 5, ECF No. 48.) Both appear to be terms of art in the automotive industry. "Turned hours" represents a predetermined number of hours that a service task should theoretically require. It does not necessarily reflect the actual number of hours spent completing the requested service. (*Id.*)

Each individual mechanic employed by Defendants is assigned an hourly rate, referred to in the industry as his or her "flat rate." A "flat rate" is assigned based on the mechanic's experience and certifications. (*Id.*) Defendants contend that "the labor component of customer pricing is calculated by multiplying the number of turned hours assigned to the purchased service by the 'shop rate' for the relevant location." (*Id.*) Defendants maintain that each location has a specific shop rate based on the competitive environment in that particular geographic area." (*Id.*) Plaintiffs, however, contest

2

whether the record evidence supports the conclusion that each location has a specific "shop rate."[2] This discrepancy does not, however, rise to the level of a disputed material fact and was not listed as such in Plaintiffs' opposition memorandum.

Plaintiffs further rejoin that Defendants' description of the compensation scheme is distortedly simplistic. For example, "certain customers regularly pay a different hourly labor rate than other customers." (Pls.' Mem. Opp'n to Mot. Summ. J. 13.) Some preferred customers are charged a "discounted rate, yet the mechanics' pay remains the same as it [is] when the work is performed for a standard customer." (*Id.*) Other services are performed at a flat rate or at no extra charge to the customer. (*Id.* at 8–9.) Plaintiffs also point out that

> Defendants fail to acknowledge anywhere in their memorandum that the labor costs charged to customers vary by the difficulty of the labor . . . [undermining] Defendants' contention that mechanics receive a commission related to the cost of labor. That is because while customer labor fees may vary, the mechanic's rate remains stagnant . . . .

(*Id.* at 12.) Defendants also note that Plaintiffs' description of their pay scheme does not include differential pay. "Mechanics receive an additional payment when the rate of pay for hours actually worked in a pay period falls below $10.88 [one and one half times minimum wage]. . . . In other words, if the mechanic receives too few turned hours along with insufficient fixed rate compensation in a given pay period, Defendants increase their

---

[2] According to Plaintiffs, when Defendants' 30(b)(6) witness Michael Miller was questioned during his deposition, he was unfamiliar with the term "shop rate." Miller referred to the rate charged in different regions as the "labor rate," the apparent functional equivalent of "shop rate." This portion of Miller's deposition, however, is not included in the exhibits supporting Plaintiffs' opposition memorandum and will not be considered.

pay 'as if' they had earned one and one half times the minimum wage for a forty hour work week." (*Id.* at 15.)

Despite a number of arguments on the margins, Plaintiffs' core contention is that Defendants are unable to demonstrate that their method of compensating mechanics is a bona fide commission scheme. Plaintiffs argue that Defendants cannot establish the critical element of proportionality between the compensation to the employees and the amount charged to the customer to qualify as a commission-based scheme.

Defendants disagree and maintain that their payment plan is a bona fide commission scheme qualifying for exemption from overtime under 29 U.S.C. § 207(i). They further contend that their method of compensating mechanics is widely accepted in the industry and is firmly rooted in Fair Labor Standards Act ("FLSA") jurisprudence.

An overview of decisions by United States Courts of Appeal reveals a deep split on the issue of whether or not the compensation scheme for mechanics at issue in this case, which is common in the industry, is proportional and compliant with 29 U.S.C. § 207(i). There is also no clear consensus among federal circuits on the burden of proof when employers invoke FLSA exemptions. The Fourth Circuit appears to require clear and convincing evidence. *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 691 (4th Cir. 2009) (*citing Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993)). The standard of proof in the Fourth Circuit is premised on the well settled rule of construction of FLSA exemptions. Such exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to

those establishments plainly and unmistakably within [the exemptions'] terms and spirit."
*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

The standard of review for summary judgment motions is well settled in the Fourth Circuit. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

5

317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). The court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). In analyzing motions for summary judgment, it is important to keep in mind that a material fact is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

There appears to be no material facts genuinely in dispute and the parties identify none in their pleadings. The sole question is whether Defendants' flat rate compensation scheme is a bona fide commission plan which qualifies for exemption from overtime under 29 U.S.C. § 207(i).

At this stage, Defendants' Rule 56 challenge focuses on the four presently named Plaintiffs, Antonio Herrera, Ricardo Leal, Dan Mobley, and Andrew Page.[3] All four are employed as mechanics by Defendants and compensated under the flat rate commission plan at issue. It is undisputed that all are in the retail or service industry. Defendants represent that the record evidence demonstrates that each named Plaintiff earns in excess of one and one half times the minimum wage ($10.88 per hour), and that at least fifty percent of their compensation constitutes commissions. (Defs.' Mem. Support Mot. Summ. J., Ex. G-1, I-1, J, generally.) Therefore, according to Defendants, the named Plaintiffs fall squarely within the overtime exception articulated in 29 U.S.C. § 207(i), which provides

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [29 U.S.C. § 206], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Fair Labor Standards Act, 29 U.S.C. § 207(i).

Subsection (a) of 29 U.S.C. § 207 requires an employer to pay overtime for any employee whose work week exceeds forty hours. It provides that such employee shall be

---

[3] Though some named Plaintiffs are no longer employed by Defendants, the Court's analysis captures the time when all were then-employed and refers to them accordingly. Herrera and Leal are employed by TBC Retail at the Coral Way Tire Kingdom, Miami, Florida; Mobley and Page work at the NTB auto repair shop, Carl D. Silver Parkway location in Fredericksburg, Virginia. (Second Am. Compl. 3, ECF No. 26.)

compensated at a rate of not less than one and one-half times the regular rate at which he is employed for all hours exceeding forty. 29 U.S.C. § 207(a)(i). At the epicenter of Defendants' Motion for Summary Judgment is whether Defendants' flat rate commission scheme is in fact a bona fide plan. The term "commission" is not defined in the FLSA. *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007). After acknowledging the absence of a statutory or universally accepted definition of "commission," the Seventh Circuit Court of Appeals in *Yi* noted "[t]he essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold." *Id.*[4]

Relying on *Wilks v. Pep Boys*, 2006 U.S. Dist. LEXIS 69537 (M.D. Tenn. 2006), Plaintiffs respond that proportionality is a critical element of any bona fide commission scheme. "Any compensation method that qualifies as a commission must demonstrate some proportionality between the cost of service to the customer and the corresponding payment to the employee." *Id.* at 36 (internal quotation marks omitted). Critical to the analysis here is the adjective "some." No reviewing court appears to apply a strict proportionality requirement. In fact, no court has defined with any degree of precision the appropriate standard of measure.

---

[4] As the Eleventh Circuit Court of Appeals perceptively pointed out, the meaning of "commission" under the FLSA "is an issue that finds little illumination from the sparse case law and the vague references in statutes and regulations." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001).

8

There appears to be a clear divide among the federal circuits as to whether the flat rate compensation scheme utilized by Defendants in this case is a bona fide commission plan qualifying for exemption under § 207(i). Similar compensation plans have been found to qualify for exemption under this provision in published opinions by the Seventh and Eleventh Circuit Courts of Appeal. On the other hand, the Sixth Circuit Court of Appeals in an unpublished opinion has held to the contrary. While district courts have adopted a variety of analytical approaches, most seem to tack toward the reasoning articulated by the Seventh and Eleventh Circuits.

In *Klinedinst v. Swift Invs., Inc.*, the Eleventh Circuit concluded that a flat rate payment formula, similar to the one in the immediate case, constituted a bona fide commission scheme.[5] 260 F.3d at 1256–57. As in the case presently before the Court, the plaintiffs in *Klinedinst* received a salary based on the number of "flag hours" worked in a forty hour work week. "Klinedinst was compensated for each paint job he performed based on the following formula: the 'flag hours' allotted to the paint labor component of the repair estimate was multiplied by his hourly rate. . . . Both [plaintiff and defendant] refer to this compensation method as a 'flat rate' system." *Id.* at 1253. The "flag hours," which were predetermined, were derived from a database utilized by auto repair shops and insurance adjusters. Thus, they did not necessarily reflect the actual time spent completing the job. *Id.*

---

[5] While the court in *Klinedinst* upheld the district court's finding that the flat rate method of compensation satisfied the commission element, it vacated the award of summary judgment by the lower court. The appellate court concluded that the record evidence before the district court was insufficient to determine whether the plaintiffs' rate of pay was greater than one and one half times the minimum wage. Therefore, the case was remanded to the trial court for additional factual inquiries.

The defendant in *Klinedinst* argued that

> the flat rate system it utilized is a form of commission, which is incentive-based and encourages efficiency and speed. [Plaintiff] was assigned an hourly rate (flag rate) for a particular task, but if it took longer than the allotted time, he would not be paid extra. . . . It is a method of providing employees with an incentive to "hustle" to finish their jobs in order to obtain a larger number of jobs for greater compensation.

*Id.* at 1254–55.

In its analysis of the flat rate system employed in *Klinedinst*, the Eleventh Circuit attached significant weight to the Field Operations Handbook published by the Wage and Hour Division of the United States Department of Labor. While acknowledging that the Field Operations Handbook was not entitled to a level of deference accorded an agency regulation, *see Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council*, 467 U.S. 837, 844–45 (1984), it found the Handbook's interpretation of § 207(i) to be instructive. The Handbook explained:

> Each job is assigned a certain number of hours for which the customer is charged, regardless of the actual time it takes to perform the job. The employee is given a certain proportion of that charge expressed in terms of so many dollars and cents per "flat rate" hour rather than in terms of a percentage of the charge to the customer. The dealer does not change the employee's share per flat rate hour if the charge to the customer is changed. In such situations, [Wage & Hour Division of Department of Labor] will not deny that such payments represent "commissions on goods or services" for the purposes of Sec. 7(i) . . . Such employment will qualify for exception under Sec. 7(i) provided all the other tests of the exemption are met.

260 F.3d at 1255 (quoting Department of Labor, Wage & Hour Division, Field Operations Handbook § 210h04(d)).

The court in *Klinedinst* concluded that the defendant's flat rate system constituted a form of commission payment which met the requirements of § 207(i) of the FLSA.

In 2007, the pivotal reasoning of the Eleventh Circuit in *Klinedinst* was adopted by the Seventh Circuit in *Yi v. Sterling Collision Ctrs., Inc.* The defendant in *Yi* operated a chain of auto repair shops. The method used to bill its customers for services was described as follows:

> It calculates the number of hours normally required to do a given type of repair (these are called "booked hours") and multiplies that number by a dollar figure. The product of this multiplication is the labor price of the repair to the customer. Sterling adds material costs to the labor price to come up with a final price. A team of mechanics is then assigned to the job. Each member of the team keeps track of the hours he works on the job. When it's completed and the hours of the team members are added up, Sterling determines each member's compensation by multiplying (1) the number of booked hours for the job by (2) the ratio of the team member's actual hours worked to the total hours worked by the team, and then by (3) a wage, per booked (not actually worked) hour, based on the skill or quality of the individual team member. . . .
>
> The faster the team works, the more it earns per number of hours, since its commission is based not on the total number of hours it puts in on a job but on the number of booked hours times each team member's booked-hour rate. That is how commissions work; they are decoupled from actual time worked.

480 F.3d at 509.

After finding that all other requirements of § 207(i) were met by Sterling Collision's compensation scheme, the Seventh Circuit concluded that the method of payment was in fact commission based. The court noted,

> The system of compensation used by Sterling is industry-wide, and of long standing. It is possible for an entire industry to be in violation of the Fair Labor Standards Act for a long time without the Labor Department noticing. But a more plausible hypothesis is that the auto repair industry

has been left alone because the character of its compensation system has been recognized for what it is--a bona fide commission system.

*Id.* at 510-11 (citations omitted).

The year following the Seventh Circuit's decision in *Yi*, the Sixth Circuit essentially declined to embrace key parts of its reasoning. In an unpublished opinion adopting the factual findings and analysis of the district court, the Sixth Circuit affirmed the trial court's conclusion that Pep Boys' flat rate payment system did not qualify as a commission under the FLSA. That court explained,

> The district court rejected Defendant's definition of "commission" and found, as a matter of law, that to constitute a commission under 29 U.S.C. § 207(i), the employer must establish some proportionality between the compensation to the employees and the amount charged to the customer. The district court reached its conclusion after thoroughly analyzing relevant case law and Department of Labor publications, noting that the precedent cited by both parties seems to reinforce--or at least not undermine--the need for proportionality in any commission-based system.

*Pep Boys*, 278 Fed. App'x 488, 489 (6th Cir. 2008) (citations omitted). *See also Huntley v. Bonner's Inc.*, 2003 U.S. Dist. LEXIS 26643, 1–13 (W.D. Wash. 2003).

The district court in *Pep Boys* described the defendants' flat rate method of compensation as follows:

> Under the current method, flat-rate employees are credited with a certain number of "labor hours" for each service job they perform. These "labor hours" are not calculated based on how long an employee actually took to do the job, but rather are computed according to the predetermined standards as to how long each job should take to complete. At the end of each week, the employee's labor hours are multiplied by his flat rate, which varies by plaintiff between $14.00 and $23.70, in order to determine the employee's flat-rate wages for that week.

*Pep Boys*, 2006 U.S. Dist. LEXIS 69537 at \*49–50.  The court began its analysis by observing that neither *Yi* nor *Klinedinst* reject the notion that a commission based compensation scheme must be at least somewhat proportional to the charges passed on to customers.  *Id.* at \*47.  The point of departure is whether the flat rate payment method, which is widely accepted in the industry, is properly characterized as proportional. Conceding that the case presented a close question, the district court concluded that

> If flat-rate compensation and labor costs were actually correlated, as the defendant claims they are, the labor costs would fluctuate based on the amount paid to the flat-rate employee tasked with completing the job.  They do not.  As such, it appears that the plaintiffs merely earn a predetermined amount for each task they complete and that this amount does not fluctuate in tandem with the amount charged to the customers.

*Id.* at \*55.

Almost all courts construing the term "commission" in the context of § 207(i), particularly as it relates to the extra-textual element of proportionality, have exercised a cautious and restrained approach.  The statute does not mention proportionality and no court has clearly defined its boundaries—or even provided a well-illuminated path of analysis.

More recently, the Third Circuit Court of Appeals in *Parker v. NutriSystem, Inc.*, declined "to adopt a test that requires a commission, under § 7(i), to be strictly based on a percentage of the end cost to the consumer." 620 F.3d 274, 283 (3d Cir. 2010).  This appears to be consistent with the majority view that the § 207(i) exemption requires some correlation between labor hour credit given to employees and labor costs passed on to customers.  *See also Pep Boys*, 2006 U.S. Dist. LEXIS 69537 at \*12 n.7.

Returning to the case at hand, Plaintiffs maintain that Defendants' flat rate compensation regimen is not commission based because there is no proportional relationship to what customers are charged for the same labor. Plaintiffs stress that Defendants' employees are not paid a percentage of the labor component billed to customers. In other words, Plaintiffs contend that the mechanics' compensation for time and work is a constant, while the amount charged the customer is a variable. Plaintiffs argue that Defendants are essentially charging a fixed rate for services which is incompatible with the notation of commission-based compensation.

While Defendants concede that some relationship between employee compensation and customer pricing must exist, they correctly note that no court has required strict proportionality. (Defs.' Reply 5, ECF No. 53.) Defendants maintain that "[t]he critical element is that the number of turned hours for which mechanics are paid is always the same number of turned hours for which the customer pays." (*Id.*) "Therefore, mechanics are paid a portion of the labor component of customer pricing." (*Id.*) Defendants also point out that employees were paid according to varying labor rates which did not correspond to customer pricing in both *Klinedinst*, 260 F.3d at 1253, and *Yi*, 480 F.3d at 509.

> In *Yi*, the employee's commission was
>
> based not on the total number of hours [the team] puts in on a job but on the number of booked hours times each team member's booked-hour rate . . . . The percentage rate is implicit in [the] method of compensation. It is equivalent to paying the team a percentage . . . of the labor component of price of their service to the customer.

*Id.*

14

In the final analysis, based on the present legal landscape, this Court believes that Defendants hold the stronger—and better reasoned—hand. There appears to be judicial consensus that some element of proportionality is essential to qualify under § 207(i) as a commission based compensation plan. However, as the Seventh Circuit suggested in *Yi*, the proportionality need not be as formal or mathematically precise as Plaintiffs contend.

In the present case, although the flat rate compensation formula has variable and fixed rate components, ultimately the employee's salary is the equivalent of a portion of the customer's bill.[6] His or her compensation is linked to the cost passed on to the customer. Because the record evidence reveals that more than one half the salary of each of the named Plaintiffs in this case, during a representative period, consisted of commissions on goods and services, their method of compensation is a bona fide commission scheme. The other two requirements of § 207(i)—employment in the retail or services industry and salary in excess of one and one half times minimum wage—are not in dispute.

The Court therefore finds that the record evidence, even viewed in the light most favorable to the Plaintiffs, demonstrates clearly and convincingly that Defendants' flat rate compensation plan satisfies all the statutory prerequisites for exemption from overtime requirements under the FLSA pursuant to § 207(i). Defendants' Motion for Summary Judgment will therefore be granted and this case will be dismissed.

---

[6] The fact that Plaintiffs were sometimes required to perform services for no additional compensation or a separate fixed rate is of no material consequence. The critical issue is whether over fifty percent of their compensation is commission based.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Dated: May 7, 2014
Richmond, VA